In the Matter of the Judicial Settlement of the Account of HENRY E. NESMITH, as Sole Surviving Testamentary Trustee, etc.

A discretionary power given to trustees to make a disbursement of income upon and in the course of the management of the trust property, if restricted to such matters as tend to preserve it, or to make it efficient for earning purposes, is not a violation of the statute providing for the accumulation of income in certain cases, and declaring void any provision for accumulation other than as specified.   (1 R. S. 727, §§ 37, 38; Id. 773, 774, §§ 3, 4.)

N. died seized of certain real property, consisting of a warehouse, piers, wharves, etc.; by a codicil to his will he created a trust in respect thereto, giving to the trustees the "sole direction and management of said property, to improve the property if they see fit, and to buy the adjoining property  *  *  *  raising money on mortgage for either or both purposes, if in their judgment necessary." After carrying on the business for some years the trustees leased the property. Thereafter the surviving trustee erected a shed upon one of the piers at a cost of $12,000, which was essential for the purposes of the business, and resulted in an increase of the annual rental in the sum of $6,000. Upon a settlement of the accounts of the trustee, the surrogate ordered that he retain the increased income arising from building the shed until he shall have paid his advances with interest. *Held*, no error; that conceding the trustee had no power to direct the expenditure from the income the property was then earning, as to which *quære*, it was within the power and discretion of the surrogate to make the order; that the trustees were not required to mortgage the property to raise the money for the improvement.

The trustees were two sons of the testator, both of whom were interested in the trust.   Prior to the death of the testator they had been in partnership with him in conducting the business; this was continued after his death by the sons, they using the same firm name, and the money received from the trust estate was deposited to the credit of an account in bank previously opened in the firm name.   After the death of one of the trustees the survivor continued the business and the deposit account as before; he made use of this bank account in his own private affairs. It was found that at some periods the trust estate was indebted for advances made, and at others the bank balance was less than the amount of the trust fund with which the trustee was chargeable.   Objection to the deposit of the trust fund in this manner was made for the first time on the accounting, by the widow and children of the deceased trustee. The survivor thereupon immediately opened a separate bank account

for the trust, and charged himself with full interest on the over-drafts. The contestants claimed that as the trustee had mingled the trust funds with his own he should be charged with full interest upon all the trust moneys deposited. *Held,* untenable ; that as it appeared the trustee had acted in entire good faith, and with no intention to com-mit a breach of trust, he, in so voluntarily charging himself with interest on the overdrafts, if he had not done more, had at least done all that could be required of him.

The trustee was credited with items of moneys retained for office rent and expenses. The surrogate found, from sufficient evidence, that it was necessary to have an office in connection with the business. *Held,* that the credits were proper.

(Argued December 14, 1893 ; decided January 16, 1894.)

Appeal from order of the General Term of the Supreme Court in the second judicial department, made the second Monday of May, 1893, which affirmed a decree of the Surro-gate's Court of Kings county settling the accounts of the petitioner as the sole surviving trustee under a codicil to the will of James Nesmith, deceased.

The facts, so far as material, are stated in the opinion.

*J. Tredwell Richards* for appellants. The trustee should be charged with interest at the legal rate upon all moneys deposited in his private bank account in the name of Nesmith & Sons. (*Dunscombe* v. *Dunscombe,* 1 Johns. 508 ; *Ex parte Townsend,* 15 Ves. 470 ; *Spencer* v. *Popham,* 5 Redf. 425 ; *Cook* v. *Lowry,* 95 N. Y. 103.) The contestants did not in any way acquiesce in or ratify the deposit of the trust funds in the private bank account of Henry E. Nesmith, nor the use which he made of said funds so deposited. (*Adair* v. *Brimmer,* 74 N. Y. 539 ; *Mumford* v. *Mumford,* 6 Johns. 1.) The surro-gate erred in that part of his first conclusion of law which holds and declares that the increased income arising from the expenditures for building the shed on the pier of the trust property mentioned should be retained by the trustee until he has received a full return for his advances for that purpose and interest, if the trust shall last so long. (*Dannat* v. *Jones,* 2 Den. 602; *Harris* v. *Clark,* 7 N. Y. 242; *Kilpatrick* v.

*Johnson*, 15 id. 322, 324; *Pray* v. *Hegeman*, 92 id. 508; *Palmer* v. *De Forest*, 95 id. 13; *Cook* v. *Lowry*, Id. 103; *Hobson* v. *Hale*, Id. 588; *Williams* v. *Williams*, 8 id. 538; 1 Perry on Trusts [2d ed.], §§ 395, 397; Gray on Perpetuities, 671–679; *In re Underhill*, 117 N. Y. 471; *In re Hawley*, 104 id. 250; *Bevan* v. *Cooper*, 72 id. 317.) As the benefici- aries, including the contestants, were absolutely entitled to the net earnings of the trust estate, the act of Henry E. Nesmith in taking those earnings and appropriating them to the mak- ing of improvements and additions to the *corpus* of the trust estate was a conversion, and the contestants are entitled to interest on the amounts so taken from the date of the taking. The taking and the use made of the earnings being without legal right and in violation of the right of contestants, the trustee is liable for interest. (*Freeman* v. *Cook*, 6 Iredell Eq. 373; *Eaves* v. *Hickson*, 30 Beav. 136; *Barrett* v. *Wyatt*, 8 Jurist, 1045.)

*L. H. Arnold, Jr.*, for respondent. The surrogate correctly held that the cost of building the shed was payable out of the increased rental produced by and received for said shed. (*Morse* v. *Morse*, 85 N. Y. 53; *Greason* v. *Ketaltas*, 17 id. 491; Hill on Trustees, 429; *Bowers* v. *Strathmore*, 8 Lond. Jur. 92; *Vyse* v. *Foster*, L. R. [8 Ch. App.] 309.) The surrogate correctly allowed the trustee for office rent and office expenses. (*Fowler* v. *Lockwood*, 3 Redf. 465; Redf. Law & Pr. [4th ed.] 455.) The surrogate has charged the trustee with all the interest for which the trustee can, in any event, be held liable. (*Jacot* v. *Emmett*, 11 Paige, 142; *Price* v. *Holman*, 135 N. Y. 124.)

GRAY, J. James Nesmith, the testator, died in 1872; leaving a last will and testament; by a second codicil to which he created an express trust during the lives of his two sons, James I. and Henry E. Nesmith, who were also named as trustees, affecting certain valuable property, consisting in warehouse, piers and wharves in the city of Brooklyn, which were known and described as the "Empire Stores." In 1886

James I. Nesmith died and since then Henry E. Nesmith has acted as the sole surviving trustee. This proceeding was instituted by the trustee to obtain a judicial settlement of his accounts for the year 1891 and certain of the objections, which were made to his accounts, form the subjects for our consideration. The contestants and appellants here are the widow and children of the deceased trustee James I. Nesmith. During testator's lifetime, he had been engaged in the warehouse business upon a large scale and after his death that business was continued by his trustees, under the provisions of this codicil. In 1888, the trust property referred to was leased to the Empire Warehouse Company for five years. In 1891 the trustee, deeming it necessary for the purposes of the business, erected a shed upon one of the piers, at a cost of $12,000. In his accounts appeared the item of $7,500; which represented a payment towards that cost and these appellants objected that it was an unlawful appropriation of income to the erection of a permanent improvement and addition to the trust property. The codicil, after creating the trust in favor of testator's children and certain grandchildren, provided with respect to the trust property, as follows, viz.: "Said James I. and Henry E. to have sole direction and management of said property, to improve the property if they see fit, and to buy the adjoining property on same block (any such purchases to be included in this trust) if they see fit, raising money on mortgage for either or both purposes if in their judgment necessary; to receive the earnings of said property, and after deducting therefrom all charges, expenses and disbursements, including the aforesaid annuity, to account to the heirs for their respective portions," etc.

Upon the death of the survivor of the two trustees the trust property was directed to be sold and the proceeds divided among the testator's children, in a prescribed mode, not necessary to consider critically. The objection to the payment for the shed was sustained and the credit disallowed to the trustee; the referee holding, in an opinion, that the cost of the shed was properly chargeable to the *corpus* of the estate;

upon which the trustee would have an equitable lien for re-payment. In this view he was sustained by the surrogate; who thought that if the codicil made "a provision for creation of betterments and permanent improvements out of the income of the trust fund, it was in reality an accumulation *pro tanto*" and, hence, there would result a violation of the statute as to accumulations. But he was of the opinion that, while there was no authority for the trustee to make the expenditure, he was entitled to be presently indemnified and might retain the increased income which arose from the additional structure, until his advances for its construction should have been repaid to him. The surrogate's decree was sustained at the General Term. If it were necessary to decide the question, we very much doubt that we should be disposed to hold that there was any violation of the statute against accumulations, in the provisions of this codicil; or any improper application of the income, under the circumstances of this case. The testator gave to his trustees the sole direction and management of this warehouse property and wide discretionary powers respecting it. The codicil is not expressed in very apt language; but it is evident that the discretion does not comprehend a purchase of other property, or an improvement, of an extraordinary nature not called for by the exigency of the business, by the use of the income from the trust. But, within the lines of a reasonable management of the trust property, whether an expenditure of the income should be made upon it, in order to perfect, or to protect, the business, was a matter for the exercise of the discretion of the trustees. The earnings of the property, which they were to account for, might well be diminished by a disbursement necessary for an improvement, which was a protection of the trust business, as a going concern, without violating the direction as to their distribution among their heirs. What the law forbids is an accumulation of either rents, profits, or income, except in the manner and for the period of time specified in the statutes. A testamentary direction otherwise is declared void. (2 R. S. 726, §§ 37, 38; Id. 773, 774,

§§ 3, 4.) We cannot read any such unlawful direction in this codicil. A discretionary power to make a disbursement of income, in the course of the management of the trust property, may be deemed to be within the testamentary intention, and if it is restricted to such matters as tend to preserve it, or to make it efficient for earning purposes, there can be no violation of the statute. We should say that it is within the purview of the trust that the trustees should expend its income in maintaining its efficiency. Whether, in a particular case, the application of the income was for such a necessary purpose, or not, is largely, if not wholly, a question to be determined by the facts. The referee has found, and in doing so he was amply warranted by the evidence, that "the erection of the shed was necessary to the successful prosecution and retention of certain valuable parts of the business carried on." The evidence showed that, for the purpose of storing hides, which was a valuable part of the storage business, the erection of a shed on the pier was essential, in order to retain that branch of the business and it was shown, in addition to that consideration, to have resulted in an increase of the rental by the sum of $6,000 a year. Under the circumstances, it is difficult to see how the application of income to such a purpose is not in effectuation of the objects of the trust created.

As it was testified, it might well have been regarded as a very unbusinesslike and unwise transaction to borrow the small sum of $12,000 by a mortgage upon this extensive and valuable property, already mortgaged for $300,000, and it is scarcely conceivable that the testator intended that the trustees should be compelled to resort to it. But while we entertain these views, they are not, perhaps, essential to the affirmance of the surrogate's decree. In ordering that the trustee retain the increased income, arising from the building of the shed on the pier of the trust property, until he shall have been repaid his advances and interest, the surrogate was within a legitimate exercise of his judicial powers. Under the general jurisdiction conferred upon Surrogates' Courts, in matters relating to the conduct of executors, administrators and testamentary trustees

and to the settlement of their accounts, the surrogate has the right to order the direction of their conduct, within the rules of law, as reason and equity seem to him to dictate. (*In re Wagner*, 119 N. Y. 28.)

His decree works out a perfectly just result. The erection of the shed has not diminished the earnings, nor impaired the earning capacity of the property; but, to the contrary, has increased the one and preserved the other. The persons entitled to a distribution of the earnings of the trust estate have received them undiminished, and will continue to receive them. They are not prejudiced and, if the trust survives the period of time required to reimburse the trustee for his advances, they will be the gainers. There has been no accumulation of income. The trustee has advanced the money out of his own pocket and the increased rental, as it comes in, goes to re-pay him. We think that the surrogate's ruling on this question is quite unobjectionable and it was most favorable to the appellants.

Another question upon this accounting grows out of the use by the trustee of the moneys coming in from the trust estate and deposited in bank to the credit of an account in the name of Nesmith and Sons. That was the name under which the testator and his sons had always conducted the business and it continued to be the business name for his sons after his death, without any change. His two sons, as trustees, and the present surviving trustee had deposited all the trust moneys received to that account. It appeared upon this accounting that this trustee had made use of the bank account in his own private affairs. The finding of the referee, and which was adopted by the surrogate, was that Nesmith and Sons, or this trustee, who, individually, was the sole member of that firm, acted as bankers for the trust estate; "that at some periods the trust estate was indebted to Nesmith & Sons for advances and at other periods * * * the bank balance of Nesmith and Sons was less than the amount of the estate fund with which said trustee was chargeable;" and "that the interest on the amount of the trust fund overdrawn from April 18th, 1891, to December 11, 1891, was $219.40." Objection was, for the

first time, made to the trust fund being so deposited upon this accounting and the trustee at once opened a separate bank account for the trust and voluntarily charged himself with the full interest on his overdrafts. But the appellants objected, and now insist, because the trustee had mingled the trust moneys with his own funds, that he should be charged with legal interest upon all the trust moneys deposited in his bank account.

We think this demand was very properly overruled and, though the objection may have been within their legal right to make, it came with somewhat bad grace from the widow and children of the deceased co-trustee; in whose lifetime the trust estate had been managed in the same manner and the trust income had been deposited and kept under the same account; and when it is not pretended that any loss, or prejudice have resulted. The trustee had acted in perfect good faith and under the idea that, in following the course previously pursued with the income, he was acting in the interest of the trust estate. There is nothing to show that he had the slightest intention of committing a breach of his trust.

A strict observance of established rules requires that trust funds received for investment, in the absence of any discretion in the matter, shall be invested, as speedily as it is reasonably possible, in the modes which the law recognizes to be proper and prudent. While awaiting investment, or distribution, it is manifestly in the line of a more correct performance of the trustee's duty that he should place and hold them separately, and apart from his own funds. If he fail to do so and loss ensues, he becomes personally liable. If he use or venture them in his own business, he should be allowed to derive no personal benefit therefrom. Unreasonable neglect to invest, or to pay over, trust funds, or a personal use of them, in bad faith, would be grounds for charging him with legal interest. Adherence to such rules insures a more faithful administration of the trust and removes the elements of temptation to the trustee and of danger to the trust. In the present case, the moneys, which this trustee kept in his bank account, were not received for investment purposes; but, as income, were held by him for distribution among the beneficiaries. These

parties have suffered no loss and, in voluntarily charging himself with legal interest, the trustee, if he has not done more than he might have been compelled to do, has certainly done all that could have been exacted of him. In *Price* v. *Holman* (135 N. Y. 124) it was observed, on the authority of *Rapalje* v. *Hall* (1 Sandf. Ch. 399) and *Jacot* v. *Emmett,* (11 Paige, 142) that "a trustee is not to pay interest, even simple interest, solely for the reason that he deposits the trust moneys indiscriminately with his own; nor because he makes use of them in his own business; that there must be superadded a breach of trust, a neglect or refusal to invest the fund, at the time or in the mode, which the trust instrument, or the law itself, has pointed out." More recently, we had occasion to hold to the same effect in *Beard* v. *Beard* (decided in November, 1893.)

The intermingling by this trustee of the trust moneys with his own was not without excuse, in the circumstances of this case. He intended no wrong and his conduct is not to be visited with any such wholesale condemnation and penal consequences as these appellants insist upon. In paying into the fund interest upon the overdrafts, he exempted himself from liability to adverse criticism.

The contestants further objected that the trustee was not entitled to be credited with items of moneys retained for office rent and office expenses, and have argued at length in support of their objection here. There was neither merit nor force in the objection. The surrogate found as a fact that it was necessary to have an office in connection with the business carried on at the Empire Stores. Whether it was, or not, depended upon the evidence adduced upon the subject. There was abundance from which the referee and surrogate could properly infer as they did, which we think unnecessary to review. We should have reached the same conclusion.

The order of the General Term, affirming the decree of the surrogate, should be affirmed; with costs to the respondent, to be paid out of the estate.

All concur, except BARTLETT, J., not sitting.

Order affirmed.