**F. S. ROYSTER GUANO CO. v. UNITED STATES, and five other cases.**

Circuit Court of Appeals, Fourth. Circuit.
April 12, 1927.

No. 2570–2575.

1. Shipping ⚙︎181(4)—Under charter party, lay days began when ship was ready for cargo and so reported herself, whether she had "arrived" in legal sense, before reaching loading berth.

Under charter party providing: "Lay days for loading and discharging shall be as follows (if not sooner dispatched): Commencing from the time the vessel is ready to receive or discharge cargo, * * *" ship was "arrived" when she reached port and was ready for cargo, and had so reported herself, whether or not she had in a legal sense arrived before she was alongside loading berth.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Arrive—Arrival (of Vessel).]

2. Judgment ⚙︎714(1)—Former decision in suit between same parties, construing charter party, must be taken as law in subsequent suit.

Decision in former case between same parties, construing charter party as affecting time when lay days begin to run, must be taken as settled law, in subsequent case involving similar provisions.

3. Shipping ⚙︎184—Government, instituting suit December 12, 1924, for demurrage accruing in summer of 1920, held not guilty of laches.

Government, instituting suits on December 12, 1924, to recover demurrage, liability for which arose in the spring or summer of 1920, held not guilty of laches, barring recovery, in absence of change in situation of parties or prejudice, and in view of reason for delay.

4. Shipping ⚙︎183—Allowance of full day's demurrage for detention of ship during substantial fraction of day held proper.

Allowance of a full day's demurrage for the substantial fraction of a day during which ships were detained held not improper.

5. Shipping ⚙︎181(4)—Lay days began to run when ship, being actually ready, reported ready for cargo, and not at midnight following report.

Under charter parties providing that lay days for loading ship commence from the time the vessel is ready to receive or discharge cargo, lay days commence to run when ship, being actually ready, reported ready for cargo, and not at midnight following the report, particularly in view of practice of loading continuously throughout 24 hours each day.

6. Shipping ⚙︎181(4)—Lay days, to run from time vessel is ready for cargo, do not begin to run until she is actually ready, regardless of when she reports ready.

Under charter party providing that lay days shall commence from time vessel is ready to receive or discharge cargo, lay days do not commence to run until vessel is actually ready for cargo, regardless of when she reports herself ready.

7. Shipping ⚙︎184—As affecting time when lay days begin to run, vessel has burden of proving that she is actually ready for cargo when so reported.

Vessel has burden of proving her readiness to receive cargo at time she is reported ready, as affecting question when lay days begin to run.

Appeals from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Six separate suits in admiralty, by the United States, as owner, respectively, of the steamships Lake Freeborn, Lake Pachuta, Lake Charlotte, Goree, Lake Indian, and Winooski, against the F. S. Royster Guano Company. Decree for the United States in each of said suits, and defendant appeals in each suit. Affirmed.

Cadwallader J. Collins, of Norfolk, Va. (E. R. F. Wells, of Norfolk, Va., on the brief), for appellant.

H. H. Rumble, Sp. Asst. Atty. Gen., and Harold F. Birnbaum, Admiralty Atty., U. S. Shipping Board, of Washington, D. C. (Paul W. Kear, U. S. Atty., of Norfolk, Va., Arthur M. Boal, Admiralty Counsel U. S. Shipping Board, of Washington, D. C., and Myron H. Avery, Admiralty Atty. U. S. Shipping Board, of Hartford, Conn., on the brief), for the United States.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

ROSE, Circuit Judge. In every one of these six cases, the United States, as the owner of the respective steamships mentioned in their titles, recovered a decree for demurrage against the appellant, the F. S. Royster Guano Company, a Virginia corporation, and which, in 1920, had chartered the ships to carry phosphate rock from Port Tampa, Fla., to Baltimore, Md.

One of the charter parties, that of the steamship Winooski, as to lay days and demurrage, was identical with that passed upon by us in The Lake Yelverton, 300 F. 47, and to which the parties were the same as those now before the court. None of the other five charters contained the language which in The Lake Yelverton led the writer to dissent from the conclusion of the majority of the court. In its place there was in four of them the provision: "Lay days for loading and discharging shall be as follows (if not sooner dispatched): Commencing from the

time the vessel is ready to receive or discharge cargo. Five weather working days inclusive for loading and discharging, Sundays and legal holidays excepted." In the other (No. 2571), The Lake Pachuta, the same language was used, with the addition after the word "cargo" of the words "and custom house formalities are fulfilled."

[1, 2] In every one of the cases, the principal dispute, as it was in that of The Lake Yelverton, is as to whether, under the language of the charter parties, the ship was "arrived" when she reached Port Tampa, was ready for cargo, and so reported herself, or whether she had not in the legal sense "arrived" until she was alongside her loading berth. As already stated in five of the cases, there was no express undertaking by the ships to "haul to a customary berth" and as to them, under the great weight of modern authority, they had arrived when they reached the harbor of Port Tampa, were ready to take on cargo, and had so reported themselves. Whatever differences there were among the members of the court as to the effect of the requirement that the ship should so haul alongside a customary berth, the decision of the majority upon that question in a case between the same parties as those now before the court must be taken as settling the law here.

[3] The appellant says that, whatever might have been the rights of the libelant had it brought its suits within a reasonable time, it lost them by its long delay in taking action. The liability for demurrage arose in one case late in April or early in May of 1920, and in all the others during the summer of that year. The libels were not filed until December 12, 1924, a date which, however, was within the five years allowed by the Virginia statutes of limitations, for whatever materiality that fact may have. In consequence of the delay there had been no change in the situation of the parties. The appellee had been promptly informed of appellant's claims. Under the circumstances, no harm could have been done and no rights lost by the appellee's waiting to file its other libels until the extremely close and doubtful question raised in The Lake Yelverton had been determined. Moreover, it is perfectly clear from the evidence that the proctors for the government supposed that both parties preferred that course. In this respect they may have been mistaken, but, if so, no harm was done either to the libelant or the government, against whom it is always difficult to maintain the defense of laches.

[4] Following our decision in The Lake Yelverton Case, the learned District Judge allowed a full day's demurrage for the substantial fraction of a day during which the ships were detained. As we in substance said in that case, there is less reason, when demurrage allowance runs into so high a figure, than there was once to sustain the extremely technical rule of law that a really substantial fraction of a day shall be counted as a full day, but the same reasons which constrained us to follow it still exist. The remedy is with the charterers. They may insist, as many of them do, in otherwise stipulating in agreements of hire.

[5] We do not think that, under the language used in these charter parties now before us and in light of the established practice of the port at the time to load ships continuously throughout the 24 hours, the contention of the appellant that lay days did not begin to run until the midnight following the report of the ship as ready can be sustained, she actually being ready.

[6, 7] The appellant urges upon us, what is unquestionably true, that, no matter when the ship reported herself ready, lay days could not begin to run until she was so in fact, and that the burden of establishing the fact of readiness is upon her. We agree, moreover, that the libelant in these cases offered very little evidence on this point. It did not call the master of any of the ships, or indeed any one from any of them, and offered no explanation of its failure to do so, as we think it clearly should have done. Yet the record as a whole impresses us, as it did the learned District Judge, that the ships were ready when they reported themselves. They certainly were when they came alongside of the piers at the various hours of the day or night at which they were summoned. No suggestion that anything was done to them between the time of reporting and that of coming alongside is made. At the time, and for months after the time, the respondent obviously had no idea that they were not ready, and indeed does not now say that it has. Under the circumstances, we think it would be sticking in the bark to hold that the libelant has not made out a sufficient prima facie showing of readiness as of the time of reporting.

Affirmed.

These cases were heard by the three Circuit Judges, and an affirmance concurred in; but the late Judge ROSE, the writer of the opinion, died before the same was announced.