**STILES et al. v. OCEAN S. S. CO.**

Circuit Court of Appeals, Second Circuit.
July 3, 1929.

No. 339.

Bigham, Engler, Jones & Houston, of New York City (James N. Senecal, of New York City, of counsel), for appellants.

Haight, Smith, Griffin & Deming, of New York City (Wharton Poor and James Mc-Kown, Jr., both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). ▮ It is contended that libelants have no cause of action, because title was in the bank. While the rubber was consigned to Bank of the Manhattan Company, the bank indorsed the bill of lading, and the merchandise was delivered to the Pennsylvania Railroad on the order of Wm. H. Stiles & Co., the indorsee. By the indorsement, when notice thereof had been given to the carrier, libelants became vested with title to the goods and a party to the contract of carriage. New York Personal Property Law (Consol. Laws N. Y. c. 41) § 219; Gubelman v. Panama R. R. Co., 192 App. Div. 165, 182 N. Y. S. 403. If, as was stated at the trial, the bank still held a trust receipt until the money which it had advanced to finance the importation was repaid, such title as it retained was a mere security title, which left no dominant rights of ownership in the bank. Moreover the drafts which accompanied the bill of lading were paid by libelants as they became due during the year 1922, so that libelants' rights became complete in all respects, unhampered by any lien of the bank. In re A. E. Fountain (C. C. A.) 282 F. 816, 25 A. L. R. 319; The Trust Receipt as Security, Columbia Law Review vol. 22, Nos. 5 and 6.

Kleinhans v. Canadian Pacific Ry. Co., 203 App. Div. 715, 196 N. Y. S. 862, is relied on as holding that the libelants cannot sue. But in that case the bill of lading was drawn to order of vendor, who delivered it to a bank with the indorsement thereon: "Deliver goods only on payment of draft." The buyer took up the draft and sued the carrier, because the goods were damaged. The plaintiff was not the indorsee of the bill of lading and was held to have obtained no title until the delivery of the goods, because the bill of lading ran to the seller, who had reserved title until payment. New York Personal Property Law, § 101 (2).

Even if the drafts had not been paid by libelants, the bank would have held a mere security title under the trust receipt, and libelants, like a chattel mortgagor in possession, could sue for damages to the cargo, of which they were the equitable owners. Rogers v. King, 66 Barb. (N. Y.) 495; Dahill v. Booker, 140 Mass. 308, 5 N. E. 496, 54 Am. Rep. 465; Luse v. Jones, 39 N. J. Law, 707; Wilkes v. Southern R. Co., 85 S. C. 346, 67 S. E. 292, 137 Am. St. Rep. 890, 21 Ann. Cas. 79. They at least had the remedies of a bailee.

▮ There was abundant proof that the rubber was damaged on the voyage. The re-

ceipt for the merchandise in apparent good order and condition, when followed by a delivery of the cases stained and wet with salt water, placed upon the respondent the burden of explaining the damage, and showing that it was occasioned by a peril for which it was not responsible. The Folmina, 212 U. S. 355, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748; The Rosalia (C. C. A.) 264 F. 285. No explanation was seriously attempted. Respondent did not even call its own surveyor, who, with libelants' surveyor, had apparently seen the damaged merchandise on the pier, but relied on the absence of notation of salt water damage by the lighterman of the Pennsylvania Railroad and by its own delivery clerk. Damage was sufficiently proved.

█ It is further contended by respondent that libelants failed to present notice in writing of their claim of loss before the goods were removed, as the bill of lading required. This contention is based on the phraseology of libelants' letter of May 27, which, after giving notice of "heavy sea water damage," says, in the last clause: "We hereby notify you that we shall file claim against you when the extent of damage has been properly ascertained."

All the bill of lading required was a "notice in writing of the claim * * * before the removal of the goods from the wharf." The purpose of the provision was "not to escape liability, but to facilitate prompt investigation." Georgia, Florida & Alabama Ry. v. Blish Milling Co., 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948; The Persiana (C. C. A.) 185 F. 396.

Certainly the letter of May 27th gave notice that there was a claim, and requested respondent to have its surveyor examine the merchandise. Apparently he saw the damage with libelants' surveyor, and the respondent thus obtained knowledge of the condition of the goods. It is reasonable to suppose that the surveyor was not called, and no substantial defense upon the merits was made, because such a defense was impossible. In any event, the respondent was given notice that there was a claim for damages. That notice was sufficient compliance with the clause in the bill of lading, even when coupled with the statement that the claim would be filed "when the extent of damage has been * * * ascertained."

██ Last of all, defendant relies on the defense of laches. It is true that there was great delay in bringing suit, but there is no proof that the respondent was unduly prejudiced. Courts of admiralty apply the state statute of limitations in determining whether a claim is barred, unless some exceptional circumstances exist. Lincoln v. Cunard Steamship Co. (C. C. A.) 221 F. at page 624; David v. Smokeless Fuel Co. (C. C. A.) 196 F. 753, at page 755; The West Aleta (C. C. A.) 12 F.(2d) 721; F. S. Royster Guano Co. v. U. S. (C. C. A.) 18 F.(2d) 469. There has been no showing here that witnesses have disappeared. We can discover no reason for holding laches a bar which would not apply to almost any suit that had not been brought for three or four years after the cause of action arose. Respondent may have thought that Stiles & Co. had delayed so long that it had dropped its claim, but this circumstance alone cannot limit the latter's right.

The decree is reversed, and the cause remanded, with directions to enter an interlocutory decree for libelants, with the usual reference to report as to damages.