**THE WEST ARROW.**

**MUIR et al. v. AMERICAN DIAMOND LINES, Inc.**

**Nos. 14019, 14056.**

District Court, E. D. New York.

March 28, 1935.

Bigham, Englar, Jones & Houston, of New York City (F. Herbert Prem, of New York City, of counsel), for Muir & Co. et al.

Lord & Whip, of Baltimore, Md., for Edward A. Dinnsen and Henry Lauts & Co.

Hunt, Hill & Betts, of New York City (John W. Crandall and Frank J. Zito, both of New York City, of counsel), for claimant and respondent.

CAMPBELL, District Judge.

The above-entitled suits were brought against the steamship West Arrow and her owner, American Diamond Lines, Inc., to recover for loss of and damage to cargo alleged to have been caused by the stranding of the West Arrow, off Fort McHenry, Baltimore, Md., on November 9, 1933. A hole was stove in the bottom of the West Arrow, which permitted the entry of a large quantity of water into the compartment in which libelant's cargo was stowed, causing a total loss to some of the shipments and serious damage to the remainder.

The two suits were consolidated for the purpose of trial, and were tried before me, and I held the West Arrow and her owner liable for the loss. The West Arrow (D. C.) 7 F. Supp. 827.

An interlocutory decree was entered on July 21, 1934, referring the matter to a special commissioner to ascertain and compute the amount of the libelant's damages as well as those of Bisbee Linseed Company and E. J. O'Brien & Co.; counsel having agreed that the last two mentioned claims should abide the result of the court's decision on the merits.

The interlocutory decree provided "that upon proof of libelants' title or authority to sue, and of the compliance with the requirements of the bill of lading notice clause, or the waiver thereof, or the inapplicability of the provisions of said clause, that the libelants recover" their damages from the West Arrow and the respondent herein.

The proctors for the respective parties have been able to agree on the provable damages of the libelants, subject to reservations as to certain questions which have been left to the court for determination, and therefore have found it unnecessary to go before the commissioner.

The proctors for the respective parties have agreed upon a stipulation which, with the stipulation offered at the trial dealing with the same issue, embodies all of the salient facts; nothing having any relevance having been omitted from the stipulation.

The proctors for the steamship West Arrow and respondent have conceded "that the libelants have established sufficient proof of their authority to institute and maintain these suits, and waives any proof by the libelants as to their legal title to the goods."

This disposes of the first condition imposed by the interlocutory decree.

The amounts of libelants' respective losses have also been stipulated, and are as follows:

|  | Cargo Damage | General Av. Deps. |
|---|---|---|
| Bisbee Linseed Co., | Guilders 9,594.48 | $1,796.92 |
| Muir & Company, | 2,927.99 |  |
| Gieske & Nieman, | $5,870.65 |  |
| Wm. H. Winstead Co., Inc. | $4,001.21 |  |
| Henry Lauts & Co., (Docket No. 14019) | $1,588.83 |  |
| Ford Motor Co., | 6,644.23 |  |
| E. J. O'Brien & Co., | 300.00 |  |
| Edwin A. Dinnsen, | 5,537.43 | $485.08 |
| Henry Lauts & Co., (Docket No. 14056) | 1,170.13 | 54.60 |

Under the stipulation, the following three points are left to the court to decide:

(1) Have the libelants, Bisbee Linseed Company, Ford Motor Company, Edwin A. Dinnsen, and Henry Lauts & Co. established compliance with the requirements of clause 11 of the bills of lading of the claimant and respondent, which provides that written notices of claim and written claims must be filed within designated periods?

The question of compliance with clause 11 of the bills of lading was expressly left open at the trial, and it was agreed that, as a condition precedent to the entry of a final decree in its favor, each libelant must establish compliance with clause 11 or show that the clause was waived or was otherwise inapplicable.

It is conceded that all of the libelants, except the four above mentioned, have complied with the clause, and that as to the libelant Henry Lauts & Co., which had two shipments aboard the steamship West Arrow, they have complied with the clause as to one shipment (docket No. 14019), but, as claimant contends, not as to the other (docket No. 14056).

(2) What is the proper rate of exchange to adopt in converting into dollars the damages of libelants Bisbee Linseed Company and Muir & Co., which were calculated in guilders?

Only in the event that it be found that the Bisbee Linseed Company has established compliance with clause 11 will this question arise as to it.

(3) What interest, if any, are the libelants Bisbee Linseed Company, Edwin A. Dinnsen, and Henry Lauts & Co. entitled to on their cash deposits, given to secure any

contributions that were found due from them in general average?

Clause 11 of the bills of lading reads as follows: "Notice of claim for loss, damage, or delay must be given in writing to the vessel's agent within thirty (30) days after the removal of the goods from the custody of the vessel, or, in case of failure to make delivery, within thirty (30) days after the goods should have been delivered; provided, that written notice of claim for apparent loss or damage must be given before the removal of the goods. Written claim for loss, damage, or delay must be filed with the vessel's agent within thirty (30) days after giving the notice herein provided for. Unless notice is given and claim filed as above provided, neither the vessel, her owner, nor agent shall be liable. No suit to recover for loss, damage, delay, or failure to make delivery shall be maintained unless instituted within six months after the giving of written notice as provided herein."

■ Each of the four libelants aforesaid must show compliance with the notice clause as a condition precedent to its or their recovery.

No authorities need be cited to sustain that determination.

We are not concerned with that portion of the clause providing for the commencement of suits within six months, and will disregard it, as that is not involved in these suits.

Two conditions precedent are provided by clause 11, as follows: (a) "Written notice of claim" must be given to the vessel's agent within 30 days after the goods should have been delivered, where there has been a failure to make delivery, or before the removal of the goods, where the loss or damage is apparent on discharge from the vessel; (b) "written claim for loss" or damage must be filed with the vessel's agent within 30 days after giving the notice above provided for.

No consideration need be had as to Bisbee of that portion of the clause providing for notice of claim 30 days after the removal of the goods from the custody of the vessel, as that refers to concealed damage, and the damage here was apparent, the West Arrow's No. 1 hold having been almost completely flooded with water after the stranding.

■ Notice clauses, as was said by the Circuit Court of Appeals of this circuit, in Dibrell Bros. v. Prince Line, Ltd., 58 F.(2d)

959, 961, "are harsh at best and should not receive a broad construction."

The bills of lading were drawn by the carrier, and should receive strict construction against the carrier. Gelderman v. Dollar S. S. Lines, Ltd. (D. C.) 41 F.(2d) 398; Mynard et al. v. Syracuse, etc., R. Co., 71 N. Y. 180, 27 Am. Rep. 28.

The Circuit Court of Appeals of this circuit has also said, in Stiles v. Ocean S. S. Co. (C. C. A.) 34 F.(2d) 627, 629, in construing a notice clause: "The purpose of the provision was 'not to escape liability, but to facilitate prompt investigation.'"

See, also, The Persiana (C. C. A.) 185 F. 396.

We will now consider the question of compliance with clause 11 as to each of the four libelants whom claimant contends did not comply therewith.

■ 1. *Bisbee Linseed Company.*—This libelant's cargo consisted of linseed cake, which was delivered at Rotterdam and Antwerp in a damaged condition.

Notice of claim was given by the agent of Bisbee Linseed Company to the agent of the vessel West Arrow, in writing, before the cargo of the Bisbee Linseed Company was removed from the pier, at the respective points of discharge, in damaged condition. This showed compliance with the first part of the clause providing for notice of claim.

No other written notices or claims were filed with the vessel's agent.

Claimant contends that no written claim was ever filed with the vessel's agent, and libellant contends that the paper filed before the removal of the goods was both a notice of claim and a claim.

Exhibit A attached to the stipulation, in so far as is necessary for consideration, reads as follows:

"In the name of the holders of the Bs/L for

For Antwerp: B/L 02 1860 bags, weighing 684,076 lbs.
B/L 03 1865 bags, weighing 684,634 lbs.
B/L 04 620 bags,
For Rotterdam B/L 04 1235 bags, weighing 682,163 lbs.
B/L 05 1860 bags, weighing 692,516 lbs.

American linseed oilcake, brand Bisbee, shipped by the above-named steamer to this port and Antwerp, I have to hold you hereby responsible for the damage, caused to part of this merchandise, and consequently reserve all rights of the holders of the Bs/L and/or further interested parties for indemnification of this damage.

"Furthermore, I confirm hereby that Mr. M. H. C. van Andel C. Mzn., broker, surveyor, has been indicated by you in the name of the Owners, as your expert, with whom I shall fix the amount of this damage and whose taxations of the damage will be considered to have been made as though this were a judicial survey. For regularity sake, I request you to acknowledge receipt of the present and remain. * * *"

So much of Exhibit B as is necessary for consideration reads as follow:

"In the name of Underwriters and Importers of a parcel of American Linseed cakes, marked 'Bisbee', shipper per the abovementioned vessel, I have to protect their interests and I beg to inform you that this vessel will leave this port tomorrow for Antwerp with 2784 sound and 1561 damaged bags linseed cakes. The latter have been stowed on deck and we do not doubt, but the consignees in question will apply to you therefor with a delivery-order of the N. V. Veemsta of this city.

"With regard to the damaged linseed cakes those are nearly all of one quality and so you may have them discharged on the quay on one heap, while I intend to go to Antwerp on Thursday-night and to call on you on Friday-morning, to settle this matter then with the various parties concerned.

"In the meantime I understand that, as has been done here, you will also appoint somebody at Antwerp to establish and fix the damage in the name of the shipowners, such with a view to the responsibility, if any, of the steamer. For this reason I hereby give you notice that the parties interested will hold the steamer responsible for the damage and I shall be glad to hear from you which surveyor will be appointed by you in the name of the shipowners to settle this matter with me."

It is well established that a clause of this nature may lawfully stipulate for the performance of more than one condition, and, if not unreasonable in the circumstance, must be complied with, and the burden is on the cargo owner to prove compliance. The J. L. Luckenbach (C. C. A.) 65 F.(2d) 570.

When the bill of lading clause provides that notice of apparent loss or damage must be given before the goods are removed from the custody of the vessel, and that written claim for loss, damage, or delay must be filed with the vessel's agent within a fixed time, the giving of notice of apparent loss or damage does not relieve from the giving of written claim for loss, damage, or delay, as both must be given. A. Russo & Co. v. United States (C. C. A.) 40 F.(2d) 39. See, also, The General G. W. Goethals (D. C.) 298 F. 933, affirmed (C. C. A.) 298 F. 935; Dollar Steamship Co. v. Talbot et al., 1928 A. M. C. 369.

The mere fact that the carrier may know that goods have been damaged in transit is no excuse for failing to file a notice of claim, when it is required by the bill of lading. The Persiana, supra; The San Guglielmo (C. C. A.) 249 F. 588; The St. Hubert (C. C. A.) 107 F. 727; The Westminster (C. C. A.) 127 F. 680; T. M. Duche & Sons v. Lloyd Mediterraneo (D. C.) 31 F.(2d) 496.

In both notices to the vessel's agent, however, the cargo owners unequivocally state their intention to hold responsible for all damages, and this seems to be sufficient to constitute a claim. Anchor Line v. Jackson (C. C. A.) 9 F.(2d) 543.

Both notice of claim and claim may be contained in one letter. The Cornelia (D. C.) 15 F.(2d) 245.

The case of A. Russo & Co. v. United States, supra, cited by claimant, is distinguishable from the instant suit, as in that suit the letter filed with the carrier merely gave notice that there was apparent damage, and did not express an intention to hold the carrier liable.

The case of The J. L. Luckenbach, supra, cited by claimant, is distinguishable from the instant suit, as in that case the requirement was for two notices: The first an oral or written claim for damage disclosing the nature and extent thereof, in the presence of the captain or agent of the respondent; second, a written demand for payment of claims within 10 days after delivery.

The requirement of full disclosure of the nature and extent of the damage has been held to be unreasonable. The J. L. Luckenbach (D. C.) 1 F. Supp. 692.

A substantial compliance with a claim clause is all that is required of the libelant. Stiles v. Ocean S. S. Co., supra.

Exhibits C and D attached to the stipulation show that joint surveys were made by the surveyors representing both the cargo and vessel, at the respective ports of discharge; that by agreement between the parties the discharged merchandise was sold

at public auction at the office of the vessel's owners' surveyors, in the presence of the surveyors representing cargo interests; the prices realized at the sale for the various lots of merchandise, the net proceeds of sale, and the sound market value of the merchandise.

The respondent within the 30-day period was by the joint reports submitted by the surveyor for the libelant and its own surveyor apprised of the loss in the Bisbee shipments.

This, in view of the notice previously given, was sufficient compliance. Stiles v. Ocean S. S. Co., supra, 34 F.(2d) 627 at page 629. See, also, The Henry S. Grove (D. C.) 292 F. 502.

Bisbee Linseed Company has shown compliance by it with clause 11 of the bill of lading, and is entitled to recover.

■ *2. The Ford Motor Company.*—There were 64 packages of automobile parts, which had been shipped by the Ford Motor Company in the No. 1 hold, that had been damaged by the stranding of the vessel. The agents of the West Arrow, on November 11, 1933, wrote a letter to the Ford Motor Company advising it of the damage to its merchandise, which was received on November 13, 1933. The cargo surveyors, who had boarded the West Arrow on November 11, 1933, notified the Ford Motor Company of the facts on November 13, 1933, and at their suggestion, which was accepted by the Ford Motor Company, these packages were discharged by the vessel on November 15, 1933, and on the same day removed by the representative of the Ford Motor Company and returned to the plant of that company at Chester, Pa., for reconditioning.

These packages did not go forward as a part of the original shipment (which consisted of 274 packages of automobile parts), but lost their identity during the course of reconditioning.

The damage to the 64 cases was apparent, as the packages had been submerged by water and were wet on discharge, and the Ford Motor Company knew of the condition of these packages as early as November 13, 1933, but gave no notice of claim before removal of the goods.

There are attached to the stipulation introduced at the trial (Libelants' Exhibit 1) two letters (4 and 5), the only two letters written by the Ford Motor Company to the ship's agent. The first letter, dated November 15th, confirmed a telephone conversation with Mr. Proom the day before, and stated that it would like to have the damaged cases forwarded to Chester for reconditioning and salvage. In the said letter it indemnified the carrier for the release of the bills of lading in that connection. The second letter, dated February 28, 1934, stated that the Ford Company was in a position to forward a complete accounting in connection with their claim, and asked that it be passed for prompt collection.

If the damage to the West Arrow had been sufficiently serious to have frustrated her voyage, and as a consequence it had become necessary to discharge all of her cargo and reship it at Baltimore, the time for filing notices of claim would have commenced to run at Baltimore. Brennan Packing Co. v. Cosmopolitan Shipping Co. (D. C.) 14 F.(2d) 971.

Libelant contends that there was failure to make delivery as to the 64 cases, and that clause 11 provides that, in case of failure to make delivery, notice of claim must be filed within 30 days after the goods should have been delivered.

It has been stipulated that, under ordinary circumstances, the steamship West Arrow should have arrived at Rotterdam on November 26, 1933. Therefore libelant claims that, under clause 11, the notice of claim should have been filed on or before December 26, 1933.

On December 13, 1933, a libel was filed by the Ford Motor Company against the steamship West Arrow and claimant-respondent, and a copy of the libel was served upon the proctors for the claimant-respondent on the same day.

If the libelants' interpretation is correct, then by the filing of the libel on December 13, 1933, there was compliance with clause 11.

These goods were not lost, but were removed by the libelant at Baltimore for reconditioning, and lost their identity during reconditioning, and did not go forward with the rest of the shipment of the libelant. The 64 packages were, by agreement of the parties, severed from the shipment, and the carrier was indemnified for not delivering as provided by the bills of lading, and as to the 64 packages, the voyage ended at Baltimore, where the 64 packages were removed by the libelant for reconditioning.

I do not agree with the libelant that The West Cawthon (D. C.) 281 F. 894, 895, supports its contention that libelant was not

required to file claim for the reason that in that case the court said: "The fact is, however, that the delivery was never made at the port at which it should have been, and that, before it was ever delivered anywhere, the ship itself, or some one on its behalf, notified the libelant that the bags in question were lost."

And that does not apply to this case, because the 64 packages were not lost, and they were, under agreement between the parties, severed from the original shipment and delivered to the libelant's representative at Baltimore. The libelant was obligated to file claim on or before December 26, 1933, and the libel filed by it on December 13, 1933, a copy of which was served on the proctors for claimant-respondent, was a sufficient compliance with the notice clause. The Point Brava (D. C.) 1 F. Supp. 366.

The Ford Motor Company has shown compliance with clause 11, and is entitled to recover.

■■■ 3. *Edwin A. Dinnsen.*—The shipment of this libelant, it is stipulated, consisted of tobacco, and the tobacco shipments referred to in the libels were discharged at Baltimore and sold.

They were never delivered at destination.

It has been stipulated that the steamship West Arrow should have arrived in Rotterdam, to which port the Dinnsen shipment was consigned, on November 26, 1933.

She arrived there on December 10, 1933, and finished discharging her cargo on December 13, 1933.

Had the vessel arrived in due course, allowing the same period for her discharge, she would have finished discharging her Rotterdam cargo on November 29, 1933. Dinnsen should have filed a written notice of claim not later than December 26 or December 29, 1933.

No written notice of claim was filed by Dinnsen within the time. Dinnsen filed a libel in rem for the loss of his cargo in the United States District Court for the District of Maryland, on November 21, 1933 (7 F. Supp. 827), and mailed a copy of that libel to the agents of the West Arrow on November 23, 1933.

The libelant contends that the filing of this libel and the letter to the agents of the vessel, which accompanied it, constituted compliance with clause 11.

This does not seem to me to be so, as the filing of the libel in rem simply showed that libelant sought recovery against the West Arrow, and the letter in question of November 23, 1933, shows nothing more. Neither the libel nor the letter was sufficient to lay the groundwork for a suit in personam against the shipowner. The Bencleuch (C. C. A.) 10 F.(2d) 49, 52.

The filing of the libel was not an adequate compliance with clause 11 so far as the vessel was concerned. The Queen of the Pacific, 180 U. S. 49, 52, 21 S. Ct. 278, 45 L. Ed. 419.

There was no compliance with clause 11 by the filing of an in rem libel in Baltimore.

■■■ On or about December 28, 1933, counsel for Dinnsen and counsel for the shipowner agreed that Dinnsen's Baltimore suit should be transferred to this district. According to the damage stipulation filed, although this arrangement was not intended to abridge any rights that may have accrued to Dinnsen, it was not intended to enlarge any such rights.

On January 9, 1934, Dinnsen filed a libel in this court which provided for a joinder of American Diamond Lines, Inc., in personam.

As we have hereinbefore shown, the last day to give notice of claim was December 26 or December 29, 1933; therefore the Dinnsen libel in rem and in personam, filed in this court on January 9, 1934, was beyond the 30-day limit provided in clause 11, and too late to constitute a notice of claim.

■■■ Libelants contend that the claimant converted Dinnsen's cargo because certain persons sold the tobacco on its discharge at Baltimore, and applied the net proceeds, which were negligible, as an offset against the expenses incurred, in an effort to salvage the tobacco, and that this constituted conversion, and under the circumstances no bill of lading clause is binding upon the shipper.

The libelant cites in support of its contention the following cases: Niles-Bement-Pond Co. v. Dampkiesaktieselskabet Balto (C. C. A.) 282 F. 235; Calderon v. Atlas Steamship Co., 170 U. S. 272, 18 S. Ct. 588, 42 L. Ed. 1033; General Electric Co. v. Argonaut S. S. Line, Inc. (D. C.) 7 F. Supp. 710, 1934 A. M. C. 1147; Moore v. Duncan (C. C. A.) 237 F. 780, 783; Shelton v. Canadian Northern Ry. Co. (C. C.) 189 F. 153, 160.

The first three of the cases cited are all deviation cases, wherein the rule is well settled that valuation, notice clauses, etc.,

become void where there is deviation. The last two cases cited have no application.

The notice clause is not inoperative because the cargo was never delivered, as the clause provides not only for notice before removal, but goes much further and fixes a time limit in cases where goods have not been delivered at destination, and the evidence fixes the time within which Dinnsen should have filed his claim.

On all the facts it appears to me that there was no conversion of libelant's tobacco.

While it is true that the stipulation offered on the trial refers to Messrs. Koehler, Kemp & Koehler, as agents of the West Arrow, the fact is that they were the only cargo surveyors who handled the work, and in the damage stipulation, article IX, subdivision (b), it is stated "cargo surveyors acting for both parties boarded her."

The agents of the West Arrow, at Baltimore, were Messrs. Dichmann, Wright & Pugh. The libels herein were not based on conversion, but, even if they were, it does not seem to me that they would have any effect. Georgia, Fla. & Ala. Ry. v. Blish Co., 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948.

The libelant, Edwin A. Dinnsen, has not shown compliance with the notice clause 11, and is not entitled to recover for cargo damage.

4. *Henry Lauts & Co. (Docket No. 14056).*—This is the second of two suits brought by Henry Lauts & Co., the first having been brought in conjunction with Muir & Co. and other shippers (Docket No. 14019), and as to that suit no question is raised as to Lauts' compliance with clause 11; but as to the first suit (docket No. 14056), in which Lauts had a claim to another lot of tobacco and joined with Dinnsen in bringing that suit, which is the suit here in question, claimant contends that there was no compliance with clause 11.

Lauts never brought any suit in Baltimore in connection with the damage to this particular lot of tobacco.

The letter of Lauts & Co., on November 14, 1933, although called a claim, was in fact a notice of claim, and under the terms of clause 11, as to which I can see no ambiguity, they were bound to file a claim on or before December 14, 1933. No such claim was ever filed.

Whether the arrangement as to transferring Dinnsen's suit from Baltimore to New York included Lauts' claim is of no moment, because at most that agreement protected rights already accrued, and Lauts had not filed a claim before that time. The libel filed on January 9, 1934, was too late.

Libelant makes the same argument about conversion as in the case of Dinnsen, and claimant makes the same reply as in that case. It does not seem to me that there was any conversion.

The failure of Lauts & Co. to file a written claim with the vessel's agent, within the time specified in clause 11, debars them from maintaining this suit. The J. L. Luckenbach, supra; A. Russo & Co. v. United States et al., supra.

Henry Lauts & Co. are not entitled to recover cargo damage on cargo covered by docket No. 14056.

We now come to a consideration of the second point reserved.

What are the proper dates for fixing the rate of exchange as between dollars and guilders, as to the claims of the libelants Bisbee Linseed Company and Muir & Co.?

It is the contention of the libelants that the rate of exchange prevailing on the date of the entry of the final decree is the applicable date in this case, and they rely on Deutsche Bank v. Humphrey, 272 U. S. 517, 47 S. Ct. 166, 71 L. Ed. 383.

In that case the debt was payable in Germany in German marks, and the court held that the amount of marks payable should be converted into dollars, at the rate of exchange existing at the time of the judgment.

In Hicks v. Guinness, 269 U. S. 71, 46 S. Ct. 46, 70 L. Ed. 168, the converse of the situation was presented.

In that case the money was due from a German debtor to an American creditor, and was payable in the United States, and the court held that the American creditor was entitled to a certain number of dollars as his damages at the time the debt accrued.

The question, therefore, to be determined is, Where was the debt payable?

Respondent cites the case of Corporation of R. E. Assurance v. United States (D. C.) 6 F. Supp. 689, and contends that libelant's cause of action accrued under that decision on the date of stranding.

On January 14, 1935, the Circuit Court of Appeals of this circuit, in deciding the appeal in the last-cited case, said, 75 F.(2d) 478, 480: "Obviously, the sale was the thing

which made delivery impossible, for coal which was salable could presumably still have been delivered, though damaged, until the sale at Philadelphia put that beyond the power of the carrier."

Thus it was the time and place of the sale and not the date of the stranding which fixed the date of accrual of the libelant's cause of action.

The shipments of Bisbee and Muir were sold at Rotterdam, on December 14, 1933, and Antwerp, on December 21, 1933, and the right of recovery then and there accrued, and the rate of exchange prevailing on the date of the entry of the final decree is the applicable date in this case.

The parties having stipulated for interest from November 9, 1933, I am probably bound by their stipulation, although in admiralty the allowance of interest is determined by the court, and the dates of the sales above set forth are the proper dates from which interest should be computed.

This brings us to the last point reserved.

What interest, if any, are the libelants Bisbee Linseed Company, Edwin A. Dinnsen, and Henry Lauts & Co. entitled to on the cash deposits given to secure any contributions that were found due from them in general average?

It is stipulated that general average deposits were made by the following libelants, in the following amounts:

Bisbee Linseed Company....... $1,796.92
Edwin A. Dinnsen............. 485.08
Henry Lauts & Co. (Docket No. 14056) .................... 54.60

The Jason clause was included in the bills of lading, and under that clause the consignees agree that, if the shipowner has used due diligence to make the ship seaworthy, the cargo is to be liable in general average, when the sacrifices and expenses are made necessary by a casualty resulting from negligent navigation.

■ This court held that the West Arrow was unseaworthy when she sailed on her voyage, and that her owners did not exercise due diligence to make her seaworthy. This court also found that one of the causes of the stranding of the vessel was her unseaworthy condition.

■ The vessel owner is not entitled to contribution in general average.

Congdon on General Average (2d Ed.) p. 29, says: "The fact, however, that the

necessity for the sacrifice or expenditure for the common benefit arose through unseaworthiness or negligence makes it none the less a general average damage or loss, viz., one incurred for the general benefit of vessel and cargo; the existence of the unseaworthiness or negligence does not change the nature of such damage or loss, but, in the absence of a valid contract to the contrary, the shipowner is precluded from claiming contribution from the cargo."

■ I have not, however, found any authority which places on the shipowner the duty of waiting and trying to guess how a court will ultimately decide.

The question was not an easy one, as it is shown by the opinion of the court on the trial resulting in the interlocutory decree; and the master and owner might well, and undoubtedly did, believe that general average sacrifices had been made, and therefore was bound at his peril to exact security from cargo owners, as otherwise he would be held liable for the full amount of the general average contributions of all interests. The Santa Ana (C. C. A.) 154 F. 800.

Some point is made by libelants that the master or owner had no right to exact cash payments, but should have taken security. This, however, it seems to me requires no further consideration, as there is no evidence of any protest by the consignees at being compelled to pay cash, and, considering the smallness of the amounts, it may well have been more convenient for them to pay cash than to furnish security.

The libelants contend that they are entitled to 6 per cent. interest on these deposits, but there is no showing that any interest was received on the deposits, and no charge, even, was made of any breach of trust as regards the general average funds.

The shipowner, in requiring these cash deposits, acted in a fiduciary capacity for all interests concerned, and was a trustee for these interests.

A trustee, in the absence of a breach of trust, is not liable for interest on funds in his possession where no interest has been earned. Price v. Holman, 135 N. Y. 124, 133, 32 N. E. 124; Matter of Barnes, 140 N. Y. 468, 471, 35 N. E. 653; Matter of Nesmith, 140 N. Y. 609, 615–617, 35 N. E. 942; Beard et al. v. Beard et al., 140 N. Y. 260, 266, 35 N. E. 488; Perry on Trusts (7th Ed.) § 468; Congdon on General Average (2d Ed.) p. 157.

It is stipulated that the deposits were sent by the ship's agents abroad to New York, and were turned over to Francis C. Carr & Co., Inc., average adjusters, who deposited them in a demand trustee account in the Guaranty Trust Company, later in the Kings County Trust Company.

The Antwerp Bank allowed no interest on the deposits. The New York banks likewise allowed no interest on the deposits, pursuant to an order of the Federal Reserve Bank.

The libelants Bisbee Linseed Company, Edwin A. Dinnsen, and Henry Lauts & Co. (docket No. 14056) are entitled to recover the amount of the deposits, but without interest.

A decree may be entered in accordance with this opinion. Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court, as provided by rule 46½ of the Admiralty Rules (28 USCA § 723) and rule 42 of the Admiralty Rules of this court.